Barnard, P. J.
William H. Nichols died in Queens county on the 6th of April, 1885. The November previous he executed a will devising his real estate to the defendant, Mary L. Baldwin, who was his daughter. The plaintiff was his grand-daughter and in this will was provided for, but very unequally with his daughter. The estate was about of the value of $20,000; of this about $5,000 was real estate. The will gives $1,000 to the plaintiff and the use of $5,000 for life, with reversion to his children. If she left no children, the reversion over was left to the daughter’s children. No will was found when Nichols died, An old will of November, 1877, was found in an envelope yellow with age and sealed. A draft of an unexecuted will was found also, which was enclosed in an unsealed whole envelope. Within a few days of his death the deceased stated that he had made a will by which he had left his granddaughter her share in money, “but he was not quite satisfied with that.”
The plaintiff was with the deceased up to the time of his death, and was always spoken of by her grandfather as “a nice girl.” On this last occasion when he mentioned his will to the witness Jones, he stated that “he didn’t feel entirely satisfied without leaving Norry (plaintiff), he called her, a house to as he said—as I took it, the one he had given to his own daughter.” “He said he wanted to have a house for Norry—wanted to leave Norry a home before he died—wanted to have her established in some place before he died.”
The deceased was taken suddenly sick about eleven o’clock on Friday night, April 5, 1885, and went at once to his granddaughter’s roorii all night. Her husband went for the doctor. At about two or three o’clock the next morning he sent the plaintiff for $800 in money which was in his room, and when it was brought to him saying “ if anything happens to me suddenly you take this and use it and keep it for whatever purpose you want.” At six o’clock in the morning he went down stairs and sat at the breakfast table, and in an arm chair in the breakfast room after *514 breakfast. The desk in which the old will was found was-in this room and there was a fire there.
From all this evidence it is the best inference that the deceased gave the $800 with the intent to equalize the share-of his next-of-kin and heirs-at-law; that later he was able to get to the will, in the morning he destroyed it and thus-put them on a absolute equality, and that the gift of the $800, in case of sudden death, did not become operative in the spirit of the words used. The trial court, therefore,, acted in accordance with the evidence in finding that there1 was no will, and that the $800 ought to be charged against-plaintiff’s share of the property.
The judgment upon each appeal should be affirmed, with costs to each appellant out of the estate.
Pratt, J., concurs.